## Bonenberger et al., Appellants, *v.* Pittsburgh Mercantile Co.

Argued October 5, 1942. Before Schaffer, C. J.; Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*J. Thomas Hoffman,* with him *N. J. Lippard,* for appellants.

*William A. Challener,* with him *William A. Challener, Jr.,* for appellee.

OPINION BY MR. JUSTICE PARKER, November 25, 1942:

This is an action in assumpsit for breach of warranty on a sale of oysters in a sealed container by a retail dealer in foodstuffs. The court below gave binding instructions for defendant and the plaintiffs have appealed. We are of the opinion that, viewing the evidence in a light most favorable to the plaintiffs, the judgment should not have been entered.

Ida Bonenberger, the wife of Jacob Bonenberger, ordered from defendant by telephone a pint of canned oysters which were delivered at their home the following day. In preparing an oyster stew for the family, the wife emptied the can of oysters in a pan of milk. Thereafter in tasting the broth for seasoning she swallowed a sharp oyster shell about the size of a twenty-five cent coin. The shell lodged in her esophagus and necessitated an operation for its removal under a general anesthetic. It was shown that defendant had purchased the can of oysters from Live Fish Company of Pittsburgh who in turn had purchased it from the packer in Maryland. It is conceded that the oysters themselves were wholesome and fit for consumption.

Plaintiffs depend for a right of recovery on §15 of the Sales Act of May 19, 1915, P. L. 543 (69 PS 124). It is there provided that "there is no implied warranty or condition as to the quality or fitness for any particular pur-

pose of goods supplied under a contract to sell or a sale, except as follows: First. Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. Second. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

The seller's obligation in this suit is not based on negligence but upon warranty: 1 Williston on Sales, 2d Ed., §237. This action being on a warranty and not in trespass for negligence, the tort cases heretofore decided (inter alia, *West v. Emanuel,* 198 Pa. 180, 47 A. 965; *Ebbert v. Phila. Elec. Co.,* 330 Pa. 257, 198 A. 323) are not controlling and are here of little if any aid. Plaintiffs' right to recover is dependent upon the construction to be given to the Sales Act as applied to the facts developed on trial. Turning to the first clause of §15 it would seem clear that the buyer by implication made known to the seller the "particular purpose for which the goods are [were] required." Section 15 was taken bodily from the English Sales Act and is uniform with like provisions in the laws of other states. It is desirable that the constructions given to the section in the different jurisdictions should therefore be in harmony so far as is possible. Here a housewife called a retail grocery store with which she had dealt and ordered a can of oysters for family use. We deem the only reasonable inference that can be drawn to be that the oysters were manifestly purchased for human consumption as food. The authorities are practically unanimous in so concluding both under the common law and the Sales Act. Defendant does not seem to question this conclusion but relies rather upon the contention that the buyer did not rely upon the seller's skill and judgment in selecting the article sold.

There is again practical unanimity in the authorities to the effect that in the case of the sale of food to be put to immediate use under circumstances similar to those present here the buyer does rely upon the seller's skill and judgment in selecting the article and that there is between dealer and consumer an implied warranty that such food is wholesome and fit for human consumption, including freedom from foreign substances which may be injurious to the consumer. However, there is some conflict of authorities where the food is sold in sealed containers. Even here the decided preponderance is in favor of liability on the part of the seller: *Burkhardt v. Armour & Co.*, 115 Conn. 249, 161 A. 385, 90 A. L. R. 1260, note p. 1272; *Ward v. Great A. & P. Tea Co.*, 231 Mass. 90, 120 N. E. 225, 5 A. L. R. 242; *Griffin v. James Butler Grocery Co.*, 108 N. J. L. 92, 156 A. 636. Contra: *Bigelow v. Maine C. R. Co.*, 110 Me. 105, 85 A. 396, 43 L. R. A. (N. S.) 627; *Trafton v. Davis*, 110 Me. 318, 86 A. 179; *Rinaldi v. Mohican Co.*, 225 N. Y. 70, 121 N. E. 471, read with *Ryan v. Progressive Gro. Stores*, 255 N. Y. 388, 175 N. E. 105, 74 A. L. R. 339.

There would seem to be no normal reason "for ingrafting an exception" to the general rule merely because the subject of the sale is canned goods not open to immediate inspection by the dealer who is not the manufacturer. The dealer is in a better position to know or ascertain the reliability and responsibility of the packer than is the retail purchaser. It has long been the law applicable to warranties generally. Because it works a hardship in a particular case is not a compelling reason for changing the rule to fit such a case. It places the responsibility on the party best able to recoup his losses: 1 Williston on Sales, 2d Ed., §242. We arrive at the same conclusion. If the statute goes too far that is a matter for the consideration of the legislature.

We have not discussed liability under clause 2 of §15 because it is not necessary so to do. If clause 2 does apply liability would seem to be even clearer: *Ryan v.*

*Progressive Gro. Stores,* supra. That section uses the expression "bought by description" which is somewhat indefinite. It would unduly extend this opinion to discuss how definite the description must be to bring a sale within clause 2: 1 Williston on Sales, 2d Ed., §236a.

Defendant gave oral evidence tending to show that it was not practical in the process of canning oysters to eliminate all shells and that if the packer reduced the number of shells in a gallon of oysters to four, which would be one shell in each two pints of oysters, it was generally considered "a crackerjack sample". This contention goes to the question as to whether the canned oysters in question were reasonably fit for human consumption. Defendant in short argues that though a pebble in a can of beans *(Ward v. Great A. & P. Tea Co.,* supra) or a piece of tin in a can of corned beef *(Burkhardt v. Armour & Co.,* supra) might be considered unfit for human consumption, a different situation is presented when, as here, the shell was a part of the oyster, just as in the case of a bone or a splinter from a bone in a t-bone steak or a single cherry stone in a can of cherries, which were each originally a part of the product in its natural condition. Such testimony as was given furnished persuasive and relevant evidence bearing on the question as to whether the product was in fact reasonably fit for human consumption as food. It is, however, oral testimony and it is for the jury and not for the court to pass upon such testimony: *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523. We cannot say as a matter of law that the product furnished the plaintiffs was reasonably fit for human consumption. The jury should be carefully instructed that it is their duty to determine from the facts that question.

Defendant also argues that in any event the husband is not entitled to recover as he "is not within the warranty". The orthodox rule requires privity of contract between the parties in an action for breach of warranty. While exceptions to the general rule have been recog-

nized in some jurisdictions particularly in the case of medicines and foodstuffs (See *Rachlin v. Libby-Owens-Ford Glass Co.*, 96 Fed. 2d 597, 600) there is considerable disagreement on the subject in the different jurisdictions. If this case must be retried the proper time to dispose of this question is when the facts are shown on the new trial. One plaintiff may disappear by amendment (Act of April 12, 1858, P. L. 243, 12 PS 534; *Ribblett v. Cambria Steel Co.*, 251 Pa. 253, 96 A. 649) or if not the facts may be more clearly shown so as to disclose whether the wife or the husband was the buyer, or whether the wife was agent for an undisclosed principal, or perhaps facts may be shown that will sustain a recovery by both. The question may then be disposed of in the light of such facts and the pleadings.

Judgment reversed with a venire facias de novo.

DISSENTING OPINION BY MR. JUSTICE PATTERSON:

I cannot assent to the conclusion of the majority of the court in this case. It is true that under the Sales Act an implied warranty that the goods shall be reasonably fit for the purpose contemplated by the purchaser arises where the latter, either directly or by implication, makes known to the seller the purpose for which the goods are required and relies upon the skill and judgment of the seller to supply goods suitable for that purpose; and it is also true that in sales of food the warranty applies not only where the food is unfit for human consumption by reason of a noxious or impure condition of the food itself, but as well where it is rendered unfit by the presence of a foreign substance, such as a nail, stones, wire, or glass. However, as pointed out in *Cavanagh v. F. W. Woolworth Co.*, 308 Mass. 423, 32 N. E. (2d) 256, "the warranty must be reasonably construed in the light of common knowledge in reference to the article sold." The majority would concede that no liability attaches in the case of a cherry stone in a can of cherries, or where there is a splinter of bone in a t-bone steak, and I can perceive

of no sound reason for arriving at a different conclusion in the case of an oyster shell in a can of shucked oysters. In each instance the potentially harmful substance is natural to the product sold; in each the likelihood of its presence, arising from practical difficulties of separation in the course of preparation for consumption, is a matter of common knowledge; hence in the one instance, as in the others, no implied warranty can properly be said to arise. No authority has been cited by the majority for extending the liability upon an implied warranty to a case like the present, nor have I been able to find any; and I cannot believe the Act contemplates it should be so extended. This same view has been adopted by the Supreme Court of California, in the analogous case of *Mix v. Ingersoll Candy Co.*, 6 Cal. (2d) 674, 59 Pac. (2d) 144, followed in *Silva v. F. W. Woolworth Co.*, 28 Cal. App. (2d) 649, 83 Pac. (2d) 76, where a customer of a restaurant sought to recover on the theory of implied warranty for injuries sustained when he swallowed a small chicken bone concealed in a chicken pie. In holding that no breach of warranty was involved, the court said: "Although it may frequently be a question for a jury as the trier of the facts to determine whether or not the particular defect alleged rendered the food not reasonably fit for human consumption, yet certain cases present facts from which the court itself may say as a matter of law that the alleged defect does not fall within the terms of the statute. . . . It is not necessary to go so far as to hold that chicken pies usually contain chicken bones. It is sufficient if it may be said that as a matter of common knowledge chicken pies occasionally contain chicken bones. We have no hesitancy in so holding, and we are of the opinion that despite the fact that a chicken bone may occasionally be encountered in a chicken pie, such chicken pie, in the absence of some further defect, is reasonably fit for human consumption. Bones which are natural to the type of meat served cannot legitimately be called a foreign substance. . . . We do not believe that

the onerous rule should be carried to absurd limits." On the basis of reason, and upon authority as well, I am of opinion that the judgment of the court below was correct and ought to be affirmed.

Mr. Chief Justice SCHAFFER concurs in this dissenting opinion.