201 So.2d 824 (1967)
Bertha Belle ZABNER, Appellant,
v.
HOWARD JOHNSON'S, INCORPORATED, Appellee.
No. 568.
District Court of Appeal of Florida. Fourth District.
August 25, 1967.
*825 Horace E. Beacham, Jr., Palm Beach, for appellant.
John R. Beranek, of Jones, Adams, Paine & Foster, West Palm Beach, for appellee.
CROSS, Judge.
Appellant (plaintiff) appeals from a final summary judgment entered in favor of the appellee (defendant) in an action for damages for breach of an implied warranty and negligence.
Plaintiff, a patron of Howard Johnson's Restaurant, ordered a dish of maple walnut ice cream, and while consuming it at the restaurant a piece of walnut shell concealed therein punctured plaintiff's upper gums, fractured and damaged some of her teeth.
The trial court considered both causes of action were controlled by the same principles of law and entered a final summary judgment for the defendant. The judgment was entered on the theory that the harmful substance was natural to the product sold and could not be called a foreign substance. The trial judge applied the so-called foreign-natural test.
There are jurisdictions which represent the view that as a matter of law a harmful substance present in food which is natural to it cannot be a legal defect or a breach of the implied warranty of reasonable fitness of such food. Mix v. Ingersoll Candy Co., 1936, 6 Cal.2d 674, 59 P.2d 144. This case was brought both on the theory of implied warranty and of common-law negligence. There the plaintiff was injured by a chicken bone in chicken pot pie. On demurrer the court held the defendant was not liable *826 under either theory because chicken bones were natural to the meat served and not a foreign substance, and it was common knowledge chicken pies occasionally contain chicken bones, and therefore their presence ought to be anticipated and guarded against by the consumer.
The reasoning of the Mix case has been followed by four intermediate appellate courts: Silva v. F.W. Woolworth Co., 1938, 28 Cal. App.2d 649, 83 P.2d 76 (implied warranty and negligence alleged), a turkey bone imbedded in the dressing of a special plate of roast turkey; Lamb v. Hill, 1952, 112 Cal. App.2d 41, 245 P.2d 316 (negligence alleged), a fragment of chicken bone in chicken pie; Goodwin v. Country Club of Peoria, 1944, 323 Ill. App. 1, 54 N.E.2d 612 (implied warranty and negligence), a bone in creamed chicken made from turkey meat (query: whether a turkey bone is natural to creamed chicken); Norris v. Pig'n Whistle Sandwich Shop, Inc., 1949, 79 Ga. App. 369, 53 S.E.2d 718 (negligence), a particle of bone in a barbecued pork sandwich; and Davison-Paxon Co. v. Archer, 1954, 91 Ga. App. 131, 85 S.E.2d 182 (negligence), turkey bone in creamed turkey.
The naturalness doctrine was also applied in Brown v. Nebiker, 1941, 229 Iowa 1223, 296 N.W. 366 (implied warranty and negligence), a sliver of a bone in a pork chop swallowed by the deceased; in Adams v. Great Atlantic & Pacific Tea Co., 1960, 251 N.C. 565, 112 S.E.2d 92 (implied warranty), a partially crystallized grain of corn in corn flakes; and in Shapiro v. Hotel Statler Corp., S.D.Cal. 1955, 132 F. Supp. 891 (implied warranty), a fish bone in Hot Barquette of Seafood Mornay, made of several kinds of fish. The rule was recognized but held not applicable in Arnaud's Restaurant, Inc. v. Cotter, 5 Cir.1954, 212 F.2d 883 (negligence and implied warranty), crab shell in fish dish.
The "foreign-natural" test as applied as a matter of law by the trial court does not recommend itself to us as being logical or desirable.
The reasoning applied in this test is fallacious because it assumes that all substances which are natural to the food in one stage or another of preparation are, in fact, anticipated by the average consumer in the final product served. It does not logically follow that every product which contains some chicken must as a matter of law be expected to contain occasionally or frequently chicken bones or chicken-bone slivers because chicken bones are natural to chicken meat and both have a common origin. Categorizing a substance as foreign or natural may have some importance in determining the degree of negligence of the processor of food, but it is not determinative of what is unfit or harmful in fact for human consumption. A nutshell natural to nut meat can cause as much harm as a foreign substance, such as a pebble, piece of wire or glass. All are indigestible and likely to cause the injury. Naturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served.
It is true one can expect a t-bone in t-bone steak, chicken bones in roast chicken, pork bone in a pork chop, pork bone in spare ribs, a rib bone in short ribs of beef, and fish bones in a whole baked or fried fish, but the expectation is based not on the naturalness of the particular bone to the meat, fowl, or fish, but on the type of dish served containing the meat, fowl, or fish. There is a distinction between what a consumer expects to find in a fish stick and in a baked or fried fish, or in a chicken sandwich made from sliced white meat and in roast chicken.
The test should be what is "reasonably expected" by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation.
*827 The "reasonable expectation" test as applied to an action for breach of the implied warranty is keyed to what is "reasonably" fit. If it is found that the shell of the walnut ought to be anticipated in walnut ice cream and guarded against by the consumer plaintiff, then the ice cream was reasonably fit under the implied warranty. As applied to the action for common-law negligence, the test is related to the foreseeability of harm on the part of the defendant. The defendant is not an insurer but has the duty of ordinary care to eliminate or remove in the preparation of the food he serves such harmful substances as the consumer of the food, as served, would not ordinarily anticipate and guard against.
When a patron orders and pays for a meal or food at a public restaurant, there is a sale of such food, and there exists an implied warranty that the food so sold is reasonably fit for human consumption. We deem that a patron of a restaurant ordering a meal or food thereby makes known to the seller the particular purpose for which the food is required and by that act relies on the seller's skill and judgment in preparing such food. The sales theory applies whether one is eating a la carte, table d'hote, in a restaurant or in a cafeteria, automat or drive-in, and whether the food is eaten on or off the premises. This view is known as the Massachusetts-New York rule. Friend v. Childs Dining Hall Co., 1918, 231 Mass. 65, 120 N.E. 407, 5 A.L.R. 1100; Temple v. Keeler, 1924, 238 N.Y. 344, 144 N.E. 635, 35 A.L.R. 920.
The test of "reasonable expectation" has been followed in other jurisdictions. In Wood v. Waldorf System, Inc., 1951, 79 R.I. 1, 83 A.2d 90 (negligence), the plaintiff swallowed a chicken bone while eating chicken soup which contained chicken meat and vegetables. Recovery was allowed on the theory that, while a chicken bone was natural to chicken, it was not necessary, natural, or customary for bones to be allowed to remain concealed in this type of soup. The question was whether the presence of the bone in the soup was to be expected by the consumer. See Paolinelli v. Dainty Foods Manufacturers, Inc., 1944, 322 Ill. App. 586, 54 N.E.2d 759 (negligence), bone in noodle soup mix. Likewise, in Bonenberger v. Pittsburgh Mercantile Company, 1942, 345 Pa. 559, 28 A.2d 913, 143 A.L.R. 1417 (warranty case), where the plaintiff was injured swallowing a sharp oyster shell about the size of a 25-cent piece while eating oyster stew made from a can of oysters, the court held it was for the jury to pass on the evidence, and it could not hold as a matter of law that the oysters as furnished were reasonably fit for human consumption.
In Bryer v. Rath Packing Company, 1959, 221 Md. 105, 156 A.2d 442, 443, 77 A.L.R.2d 1 (negligence), a child's throat was injured by a small chicken bone while she was eating chow mein in a school cafeteria which purchased the chow mein in sealed cans which were advertised as "Ready to Serve Boned Chicken." While stressing the advertising on the container as boned chicken, the court after reviewing authorities decided the fact situation was more nearly akin to the reasonable expectation cases than to the naturalness cases and involved the question of whether due care was exercised by the defendant and what the plaintiff had a right to reasonably expect under the circumstances. Gimenez v. Great Atlantic & Pacific Tea Co., 1934, 264 N.Y. 390, 191 N.E. 27 (implied warranty), held the plaintiff could recover for eating canned crab meat containing small crystals. It is not clear from the opinion whether the crab meat contained struvite, a natural salt crystal formed after canning from the juices of the meat. The court merely stated that the substance was deleterious. However, in O'Hare v. Petersen, 1940, 174 Misc. 481, 21 N.Y.S.2d 487, involving struvite in shrimp, after discussing the Gimenez case it was held that even though the elements were natural to the meat, they were harmful and rendered the food unfit for consumption. See also *828 Betehia v. Cape Cod Corporation, 1960, 10 Wis.2d 323, 103 N.W.2d 64 (implied warranty and negligence), restaurant patron sustained injuries caused by a chicken bone in a chicken sandwich; the court held that it was a question for the jury as to whether the food, although containing the questioned substance, was nevertheless reasonably fit; and Lore v. De Simone Bros., 1958, 12 Misc.2d 174, 172 N.Y.S.2d 829 (implied warranty), recovery allowed for fragment of bone in a piece of salami; bone not natural to the product as distinguished from the meat in the product.
The question of whether food is fit for the purpose intended although it contains walnut shells or other natural substances must be based on what the consumer might reasonably expect to find in the food as served and not on what might be natural to the ingredients of that food prior to preparation and what is reasonably expected by the consumer is a jury question in most cases.
Reversed and remanded.
MINNET, JAMES F., Associate Judge, concurs.
ANDREWS, J., concurs specially, with opinion.
ANDREWS, Judge (concurring specially).
I concur in the decision and agree with Judge Cross' opinion insofar as it rejects the foreign-natural test and substitutes a reasonable expectation standard, but wish to add these observations.
The difficulty with the foreign-natural test lies not in its theory but in its artificial application. It seems to me that what is natural to a substance is what is reasonably expected to be found therein. Only by a strained construction of the term can a shell be considered natural to ice cream. The foreign-natural test is too often applied at a preliminary stage of production and with reference to a single ingredient rather than to the final consumer product. By moving the focus of the test to the consumable item the foreign-natural distinction as measured by the consumer's reasonable expectations becomes a valid and relevant standard.