**W. B. MATTHEWS, Plaintiff,**

v.

**CAMPBELL SOUP COMPANY,
Defendant.**

**Civ. A. No. 73–H–1319.**

United States District Court,
S. D. Texas,
Houston Division.

Aug. 13, 1974.

Flatow & Hinojosa, Marc Flatow, Houston, Tex., for plaintiff.

Vinson, Elkins, Searls, Connally & Smith, Raybourne Thompson, Jr., and Robert A. Rowland, III, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER:

SEALS, District Judge.

This action is before the Court on a Motion for Summary Judgment filed by Defendant. In this diversity suit, 28 U.S.C. § 1332(a)(1), Plaintiff seeks to recover for injuries to his teeth and gums which were allegedly suffered while he was eating the contents of a can of Defendant's Oyster Stew Soup. Plaintiff claims that the injuries were caused by a small deleterious object in the soup. Plaintiff surrendered this object to Defendant for examination and it has been identified as a small irregularly shaped oyster pearl.

■ Plaintiff sets forth two theories of recovery: strict liability in tort and negligence in the manufacture and labeling of this product. Defendant contends that on the undisputed facts before the Court, Plaintiff cannot prevail on a theory of strict liability and that there is no evidence in the record to raise an issue of negligence. In ruling on Defendant's motion this Court is, of course, bound to apply those principles of products liability and negligence law which would be applied by the courts of this State. Erie R.R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ Texas courts have long recognized that the manufacturers of food products warrant that they are wholesome and fit for human consumption. Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828 (Tex. 1942); Griggs Canning Co. v. Josey, 164 S.W.2d 835, 139 Tex. 623, (Tex. 1942); See also Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170 (Tex. 1938). The warranty was imposed by operation of law as a matter of public policy:

It seems to be the rule that where food products sold for human consumption are unfit for that purpose, there is such an utter failure of the purpose for which the food is sold, and the consequences of eating unsound food are so disastrous to human health and life, that the law imposes a warranty of purity in favor of the ultimate consumer as a matter of public policy. Jacob E. Decker & Sons, Inc. v. Capps, *supra*, at 829.

In McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex. 1967), this strict liability concept applicable to foodstuffs was extended to include consumer products generally. See also, Putnam v. Erie City Manufacturing Company, 338 F.2d 911 (5th Cir. 1964). The *McKisson* court adopted the Restatement, Second, Torts § 402A which provides as follows:

Special Liability of Seller of Product for Physical Harm to User or Consumer

1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

2. The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

■ In order to prevail under this strict liability standard Plaintiff must establish that: 1) the product in question was defective; 2) the defect existed at the time the products left the hands of the defendant; 3) that because of the

defect the product was unreasonably dangerous to the user or consumer (plaintiff); 4) that the consumer was injured or suffered damages; 5) and that the defect (if proved) was the proximate cause of the injuries suffered. Gravis v. Parke-Davis & Co., 502 S.W.2d 863 (Tex.Civ.App. 1973); Reyes v. Wyeth Laboratories, 498 F.2d 1264 (5th Cir., 1974).

■■■■ Defendant argues that, as a matter of law, the can of Oyster Stew Soup at issue here was not unfit, unwholesome, defective, or unreasonably dangerous. As indicated in Reyes v. Wyeth Laboratories, *supra*, "defective condition" and "unreasonably dangerous" are essentially synonymous. Further, in light of the Texas Supreme Court's adoption of Section 402A of the Restatement in *McKisson, supra*, it is apparent that a food product is defective or unreasonably dangerous if it is unwholesome or unfit for human consumption and vice versa.

Defendant's position is bottomed on what may be labeled the "foreign-natural" doctrine. This doctrine, which has been neither accepted nor rejected by Texas courts, apparently first emerged in Mix v. Ingersoll Candy Co., 6 Cal.2d 674, 59 P.2d 144 (1936). There plaintiff brought suit for injuries caused by a fragment of chicken bone contained in a chicken pie. The court held that the chicken pie was not unfit for human consumption as a matter of law:

> "Although it may frequently be a question for a jury as the trier of facts to determine whether or not the particular defect alleged rendered the food not reasonably fit for human consumption, yet certain cases present facts from which the court itself may say, as a matter of law that the alleged defect does not fall within the terms of the statute. It is insisted that the court may so determine herein only if it is empowered to take judicial notice of the alleged fact that chicken pies usually contain chicken bones. It is not necessary to go so far as to hold that chicken pies usually contain chicken bones. It is sufficient if it may be said that as a matter of common knowledge chicken pies occasionally contain chicken bones. We have no hesitancy in so holding, and we are of the opinion that despite the fact that a chicken bone may occasionally be encountered in a chicken pie, such chicken pie, in the absence of some further defect, is reasonably fit for human consumption. *Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones.* At least he cannot hold the restaurant keeper whose representation implied by law is that the meat dish is reasonably fit for human consumption, liable for any injury occurring as a result of the presence of a chicken bone in such chicken pie." At 148 (Emphasis supplied)

Probably a majority of jurisdictions having occasion to treat the problem have adopted the Mix rationale. See, for example: Webster v. Blue Ship Tea Room, Inc., 347 Mass. 421, 198 N.E.2d 309 (Mass. 1964), (fish bone in New England fish chowder); Allen v. Grafton, 170 Ohio St. 249, 164 N.E.2d 167 (1960) (oyster shell in oyster); Adams v. Great Atlantic & Pacific Tea Co., 251 N.C. 565, 112 S.E.2d 92 (partially crystalized grain of corn in a package of corn flakes); Brown v. Nebiker, 229 Iowa 1223, 296 N.W. 366 (1941), (sliver of bone in pork chop); Courter v. Dilbert Bros., Inc., 19 Misc.2d 935, 186 N.Y.S. 334 (1958), (prune pit in jar of prune butter); Norris v. Pig'N Whistle Sandwich Shop, 79 Ga.App. 369, 53 S.W.2d 718 (1949), (particle of bone in pork chop sandwich); Goodwin v. Country Club of Peoria, 323 Ill.App. 1, 54 N.E.2d 612 (1944), (turkey bone in cream turkey).

A relatively recent expression of the foreign-natural view is found in Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1965). While eating at

defendant's cafeteria, plaintiff encountered a cherry stone or pit in a slice of cherry pie. The court stated that vendors are strictly liable for injuries occasioned by the serving of food which is unwholesome or deleterious or which contains a vice or defect, but, held that a restauranteur is not liable for injuries resulting from substances natural to the food served and inadvertently left therein. The court's reasoning is attractively simple: if the food contains only natural substances it cannot be unfit or unwholesome. The essence of the foreign-natural rule and the rationale behind it is captured in the following passage from *Musso*:

> The rationale of the majority rule as expressed in the cited authorities is that substances which are a natural part of the food served are not considered foreign matter or substances if inadvertently left therein. On this premise it is reasoned that the presence of substances natural to the ingredients or finished product does not constitute breach of the vendor's implied warranty that the food is wholesome and fit for human consumption. The cases further hold that the warranty implicit in the sale of food must be construed in the light of the common knowledge with reference to the nature and character of the food being served. In this respect it is further reasoned common experience dictates that one eating the meat of animals, fowl or fish should do so with the knowledge such foods may contain pieces of bone. At 426.

Not all jurisdictions have followed the foreign-natural view; it has been rejected by several courts in favor of a "reasonable expectation" test. In Zabner v. Howard Johnson's Inc., 201 So.2d 824 (Fla.App. 1967), a consumer was injured by a piece of walnut shell concealed in a dish of maple walnut ice cream. Following the foreign-natural test the trial court entered judgment for the defendant. After tracing the history of this doctrine and its application the appellate court opted in favor of a test of "reasonable expectation." "The test should be what is *'reasonably expected'* by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation."

Observing that natural substances can often be as dangerous to the consumer as foreign objects such as a pebble or a piece of glass or wire, the *Zabner* court stated: "[The] naturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served." The key question under the reasonable expectation test is whether the consumer ought to have anticipated the injury producing object in the final product not whether the object is foreign or natural. What the consumer might reasonably expect, the court noted, is a jury question in most cases.

The reasonable expectation view is also well stated in Betehia v. Cape Cod Corp., 10 Wis.2d 323, 103 N.W.2d 64 (1960):

> The test should be what is reasonably expected by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation. What is to be reasonably expected by the consumer is a jury question in most cases; at least, we cannot say as a matter of law that a patron of a restaurant must expect a bone in a chicken sandwich either because chicken bones are occasionally found there or are natural to chicken.
>
> The test as applied to an action for breach of the implied warranty is keyed to what is "reasonably" fit. If it is found that the chicken bone the size alleged ought to be anticipated in a chicken sandwich and guarded against by the consumer plaintiff, then the sandwich was reasonably fit under the implied warranty. At 69.

See also, Bryer v. Rath Packing Co., 221 Md. 105, 156 A.2d 442, 77 A.L.R.2d 1

(1959); Wood v. Waldorf System, Inc., 79 R.I. 1, 83 A.2d 90 (1951); and Bonenberger v. Pittsburgh Mercantile Company, 345 Pa. 559, 28 A.2d 913 (1942).

Texas courts have never been in a position requiring an election between these two competing doctrines. A great number of cases involving harmful objects have been litigated but the objects were so obviously "foreign" that the issue did not arise. See, Athens Canning Co. v. Ballard, 365 S.W.2d 369 (Tex.Civ. App. 1963), (burr in a can of purple hull peas); Brumit v. Cokins, 281 S.W. 2d 154 (Tex.Civ.App. 1955), (glass in a milk-shake); Campbell Soup Company, Inc. v. Ryan, 328 S.W.2d 821 (Tex.Civ. App. 1959), (metal washer in a TV chicken dinner); Sweeney v. Cain, 243 S.W. 2d 874 (Tex.Civ.App. 1951), ("greenish brown slimy looking stuff with black spots on it" in a bottle of Coca-Cola).

■ Making an *Erie* educated guess, this Court holds that, if faced with the problem, Texas courts would follow the reasonable expectation rule as it is stated in *Zabner*. It is obvious that the "reasonable expectation" approach is considerably more compatible and consistent with Section 402A which has been adopted as the law of Texas in product liability cases. Section 402A makes the seller liable for injuries caused by defective or unreasonably dangerous products. "Defective condition" is defined in Comment (g) as " . . . a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." An article is "unreasonably dangerous" according to Comment (i) if it is " . . . dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." These Comments have been viewed as persuasive if not controlling in the application of Section 402A. Garcia v. Sky Climber, Inc., 470 S.W.2d 261 (Tex.Civ.App. 1971).

If Texas courts were to follow the "reasonable expectation" test they logically should reach a result consistent in every case with the Restatement definitions of "defective condition" and "unreasonably dangerous." This would not necessarily be true under the foreign-natural doctrine. It would be possible under that approach only if it is assumed that consumers *always* contemplate the presence of every species of object which might be categorized as natural to the food they are eating regardless of how infrequently the object might appear in common experience. That is obviously a faulty assumption which Texas courts are not at all likely to make.

Andrews, J., concurring in *Zabner, supra,* suggests that the difficulty with the foreign-natural test as a problem solving device lies not in its theory but in its artificial application. He contends that courts too often apply it at a preliminary stage of production focusing on a single ingredient rather than the final consumer product. "By moving the focus of the test to the consumable item the foreign-natural distinction as measured by the consumer's reasonable expectations becomes a valid and relevant standard."

If this analysis is correct, the only way of avoiding misapplication of the foreign-natural theory is to focus on what the consumer might reasonably expect to find in the final product. This being the case it would make even more sense to discard the foreign-natural distinction and go directly to the reasonable expectation issue. The use of these labels does not advance the inquiry and unnecessarily increases the possibility of confusion on the ultimate issue.

Loyacano v. Continental Insurance Company, 283 So.2d 302 (La.App. 1973) is an example of the confusion which adherence to the foreign-natural distinction can create. There the plaintiff sued for injuries caused by a bone fragment concealed in a ground meat patty. The court first professed adherence to the foreign-natural distinction of *Musso, supra,* and then stated:

In Musso there was ample evidence to show the probability of expectancy of

cherry pits in pitted cherries, but unfortunately there is no evidence in the present case concerning the probability of pieces of bone appearing in hamburger. Simply as a matter of general knowledge, we cannot say that we can take judicial notice that a hamburger patty should not contain any pieces of bone whatsoever. . . .

It may be said that a product can be considered defective if it does not meet the reasonable expectations of the ordinary consumer as to its safety. It is not the fact that a defect is a natural one which is important to this inquiry, but the fact that the ordinary consumer would expect that he might encounter it, and thus he would normally take his own precautions. A package of ground meat is not expected to be consumed from the sealed package as a bottle of soda water or milk, but is expected to be processed or otherwise altered before consumption by the purchaser. Therefore, it seems to us that the strict liability imposed upon vendors of sealed packages of that nature, cannot be imposed upon the vendor here, except insofar as a foreign object would be concerned. For a natural object, such as a bone, from the only evidence produced in this case, it appears that the inquiry should be directed to the size of the bone left in the ground meat. At 305.

The court went on to hold defendant liable for the injury stating that defendant had not presented sufficient evidence to prove its lack of negligence in handling the ground meat. Lenmon, J., in a concurring opinion, indicates that *Musso* is the source of the problem and advocates a rethinking of the foreign-natural distinction, possibly portending changes to come in Louisiana jurisprudence. Texas courts have not descended into this quagmire and this Court is confident that they will not.

██ Having settled on the "reasonable expectation" standard the question before this Court can be restated. Can it be said, as a matter of law, that the consumer can reasonably expect to encounter a pearl in a can of Defendant's Oyster Stew Soup. This Court thinks not. It is clearly an issue for the jury to decide. With the undisputed facts reflected in the pleadings, interrogatories and affidavits on file herein it would be impossible for this Court to ascertain what the common consumer experience is with respect to pearls in canned oyster stew. Defendant's Motion For Summary Judgment on the issue of strict liability is therefore denied.

Defendant's motion going to Plaintiff's negligence theory of recovery is also denied. Even where there are no facts in dispute, it is usually for the jury to decide whether the conduct in question meets the reasonable man standard. Cf., Wright & Miller, Federal Practice and Procedure, § 2729 at 572. On the facts reflected in this record the Court cannot say that Defendant was not negligent in the manufacture and labeling of this product as a matter of law.