The issue in this case is whether the trial court erred in entering a summary judgment in favor of the defendants on the plaintiffs' claim that they were liable to them because of a restaurant's serving him raw oysters that he alleges were infected with hepatitis.
On February 10, 1986, around 8:00 p.m., Nathaniel E. Cain, the plaintiff, arrived at the Sheraton Perimeter Park South Hotel to meet some business associates. While he was at the Sheraton, he consumed approximately three dozen complimentary raw oysters, and bought approximately $38.00 worth of liquor. Several other members of his party also ate several of the raw oysters off his plate.
Cain left the Sheraton around 9:00 p.m. and went to spend the evening at his sister's house. The evidence tended to show that around 11:00 p.m., Cain woke up feeling nauseous, that he had a bad headache, and that he subsequently went to a hospital. After eight days, the hospital released him with a diagnosis that he might have suffered from an allergic reaction to seafood.
After Cain's release from the hospital, he returned to his home in South Carolina. Two months later, he was still feeling ill so he went to see Dr. Jim B. Burford, who determined that Cain was suffering from hepatitis type A, which Dr. Burford concluded had been contracted from eating raw oysters. Cain claims that the raw oysters he ate at the Sheraton were contaminated and that as a result of his eating them he was sick for over a year, that he was unable to maintain his business or income, that his wife had to take care of him, and that he was worried that his condition was contagious.
In June 1987, Cain and his wife sued the Sheraton, Woodlands Restaurant, Empire Seafood Company, Inc., and Bon Secour Fisheries, Inc. He alleged negligence, breach of implied warranty of merchantability, and liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), and she alleged loss of society and consortium. After the conclusion of discovery, the defendants moved for summary judgment. The court granted Sheraton's and Woodland's motion on the grounds that Cain had failed to offer substantial evidence that they had been negligent, or that his illness had been proximately caused by consuming the raw oysters at the Sheraton and that the AEMLD did not apply in this case. The trial court reserved judgment on the motions for summary judgment filed by Bon Secour and Empire Seafood until they submitted affidavits showing that they could not have known from prior dealings with "respective antecedent purveyors" that Health Department violations, Department of Conservation violations, or matters relating to risk or a duty of suspicion existed. Subsequently, Bon Secour and Empire submitted affidavits and invoices showing that they did not have any notice of any violations or matters relating to risk or a duty and the trial court then entered summary judgment in their favor. Cain appealed the trial court's ruling in favor of all the defendants.[1] Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary *Page 220 
judgment. The rule requires that, in order to properly enter a summary judgment, the trial court determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094 (Ala. 1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.[2] Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381
(Ala. 1986). See also Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
The issues in this case require that we consider the effect of Ala. Code 1975, § 7-2-314, and the AEMLD upon the action. Section 7-2-314 provides in pertinent part:
 "(1) Unless excluded or modified (section 7-2-316), a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
 "(2) Goods to be merchantable must be at least such as:
". . . .
 (c) Are fit for the ordinary purposes for which such goods are used. . . ."
The AEMLD is not based on a theory of strict liability in tort, but it retains a fault concept. Atkins v. American MotorsCorp., 335 So.2d 134, 139 (Ala. 1976). " '[A] plaintiff must prove he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer. . . .' " Ex parte Morrison's Cafeteria of Montgomery, Inc.,431 So.2d 975, 977 (Ala. 1983), quoting Atkins v. American MotorsCorp., 335 So.2d at 141.
According to the Court in Morrison's, "[t]he two standards go hand-in-hand, for it is apparent that a food product is defective or unreasonably dangerous if it is unmerchantable or unfit for human consumption." Morrison's, 431 So.2d at 977, citing Matthews v. Campbell Soup Co., 380 F. Supp. 1061
(S.D.Tex. 1974).
There are two tests that the courts use to determine if food is unmerchantable or unreasonably dangerous; one is the "foreign-natural" test, and the other is the "reasonable expectation" test. See Morrison's, 431 So.2d at 977-78. After examining both tests, this Court in Morrison's decided to follow the "reasonable expectation" test as adopted by the Florida courts in Zabner v. Howard Johnson's, Inc., *Page 221 201 So.2d 824 (Fla.Dist.Ct.App. 1967). According to the "reasonable expectation" test:
 "[T]he pivotal issue is what is reasonably expected by the consumer in the food as served, not what might be natural to the ingredients of that food prior to preparation. . . . 'Naturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served.' "
Morrison's, 431 So.2d at 978, quoting Zabner, 201 So.2d at 826.
This Court, in Morrison's, found that the adoption of the reasonable expectation test was compatible with both the AEMLD and the implied warranty of merchantability, because "[t]he terms 'defect,' 'unreasonably dangerous,' and 'merchantable' all focus on the expectations of the ordinary consumer, possessed of the ordinary knowledge common to the community." 431 So.2d at 978. See Casrell v. Altec Industries, Inc.,335 So.2d 128 (Ala. 1976).
Generally, the question of what a consumer is reasonably justified to expect to find in his food is a question for the jury, unless the court finds, as a matter of law, that the consumer would reasonably expect to find the item in his food.Morrison's, 431 So.2d at 979. See Mix v. Ingersoll Candy Co.,6 Cal.2d 674, 59 P.2d 144 (1936).
 "Courts cannot and must not ignore the common experience of life and allow rules to develop that would make sellers of food or other consumer goods insurers of the products they sell. . . . '[C]onsumers . . . have rather high expectations as to the safety of the products which are offered for sale to them . . . [and] they have a rather low threshold for the frustration of these expectations.' "
Morrison's, 431 So.2d at 979, quoting Rheingold, What Are TheConsumer's "Reasonable Expectations"?, 22 Bus.Law. 589 (1967).
This Court, in Morrison's, held that the presence of a one-centimeter bone did not render a piece of fish unreasonably dangerous. 431 So.2d at 978-79. The Sheraton and Woodlands argue that the Morrison's principle is applicable here because, they say, the average consumer knows that raw oysters are sometimes contaminated and they argue that a customer should reasonably expect to find contamination in a few raw oysters. We disagree. This Court cannot conclude that, as a matter of law, a consumer should reasonably expect to eat a contaminated oyster. The question concerning the reasonable expectation of a consumer is usually a question for the jury, and we see no reason to depart from that principle in this case. Only in limited circumstances such as were present in Morrison's may a court decide what a consumer should reasonably expect to find in his food, "as a matter of law."
Bon Secour and Empire Seafood stated that the issue for review is "[w]hether the trial court correctly granted summary judgment where the appellant submitted no evidence that his injuries were proximately caused by the consumption of oysters nor that the appellee supplied the alleged contaminated oysters."
Under both the AEMLD and § 7-2-314, the defect or lack of merchantability, of course, must be proved to have been the proximate cause of the plaintiff's injuries. Generally, the question of proximate cause is a question of fact to be determined by the jury. See General Motors Corp. v. Edwards,482 So.2d 1176 (Ala. 1985); Marshall County v. Uptain,409 So.2d 423 (Ala. 1981).
There was evidence that Cain became ill within several hours of eating the raw oysters at the Sheraton. The defendants presented evidence to the trial court that hepatitis has a long incubation period and that the hospital that treated Cain found that he possibly suffered from seafood allergies. The trial court concluded, however, that Cain presented no rebuttal evidence "tending to show that hepatitis can occur within hours of ingestion."
We must respectfully disagree with the trial court. Cain submitted an affidavit from Dr. Jim Burford, who examined Cain about two months after he was released *Page 222 
from the hospital. Dr. Burford stated that he diagnosed Cain as suffering from hepatitis at the time he examined him. He stated that the illness immediately following the consumption of the oysters was caused by ingestion of contaminated oysters. He did not say that the illness immediately following the consumption was a symptom of hepatitis.[3]
The defendants claim that Cain offered no "substantial evidence" that his illness was caused by the consumption of the raw oysters, because, they contend, Dr. Burford's affidavit was not based upon personal knowledge of the plaintiff's illness at the time of his hospitalization and therefore presents evidence that would be inadmissible at trial.[4]
In Perry v. Mobile County, 533 So.2d 602, 604 (Ala. 1988), this Court discussed the requirements for admissibility of an affidavit and held:
 "The issue of admissibility of the evidence in opposition to the motion for summary judgment was raised by Risher first time on appeal. In response to his contention on this issue, we adopt the following language from C. Wright, A. Miller M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983):"
 " 'A party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection and, in the absence of a "gross miscarriage of justice," the court may consider the defective affidavit. This principle applies to affidavits containing evidence that would not be admissible at trial as well as to affidavits that are defective in form. This motion to strike must be timely [and] the decision on that question is left to the discretion of the trial judge. It is clear that a motion to strike presented for the first time on appeal comes too late.' "
In this case, none of the defendants moved to strike the plaintiff's affidavit filed in his attempt to carry his burden of showing that there was a triable issue. The first time any of the defendants objected to the use of the affidavit came after the case was appealed. Because none of the defendants called the trial court's attention to the claim that Burford's affidavit was inadmissible, we hold that the defendants waived their right to object to its use. McMillian v. Wallis,567 So.2d 1199 (Ala. 1990). Even though Dr. Burford's affidavit might have been inadmissible because it was not based upon personal knowledge of the hospitalization, we find that its availability for the trial court's consideration, in any event, did not result in a "gross miscarriage of justice." Consequently, Dr. Burford's affidavit will be considered as evidence filed by Cain in opposition to the defendants' motion for summary judgment.
The Sheraton and Woodlands argue that they can not be held liable under § 7-2-314 because, they say, there was no "sale" by the Sheraton to Cain. Section 7-2-106(1) defines "sale" as the passing of title from the seller to the buyer for a price. Although the evidence shows that the Sheraton offered free oysters to patrons in the lounge, we cannot hold that the oysters were not "sold" within the meaning of the statute. Cain was a patron in the lounge, and the evidence shows that he had spent approximately $38.00 on drinks for himself and his business associates while he ate the oysters. He claims that the only reason he and his associates went to the Sheraton was to eat raw oysters.[5] *Page 223 
We conclude that the learned trial judge erred in holding, as a matter of law, that Cain had failed to present substantial evidence that his illness was proximately caused by his consumption of raw oysters at the Sheraton. We find, upon review, that there is a genuine issue of material fact as to whether Cain should reasonably have expected that the raw oysters may have been contaminated. There is also a genuine issue of material fact as to whether the consumption of the raw oysters at the Sheraton was the proximate cause of Cain's hepatitis.
Based on the foregoing, we reverse the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] The appellant did not discuss the issue of negligence; therefore, this Court will not address it.
[2] This action was filed after June 11, 1987; therefore, the "substantial evidence" standard applies. Ala. Code 1975, §12-21-12; Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer,Summary Judgment Under the Federal Rules: Defining GenuineIssues of Material Fact, 99 F.R.D. 465, 481 (1982).
[3] We note that, according to The Sloane-Dorland AnnotatedMedical-Legal Dictionary, p. 339 (1987), the incubation period for hepatitis type A is approximately 15 to 60 days; consequently, a diagnosis made two months after the consumption of raw oysters is plausible, and, therefore, a jury question.
[4] An affidavit submitted in support of, or in opposition to, a summary judgment motion must set forth facts that would be admissible at trial. Rule 56(e), A.R.Civ.P.; Welch v. HoustonCounty Hosp. Bd., 502 So.2d 340 (Ala. 1987). The party alleging the inadmissibility must make the trial court aware of the fact that the affidavit is inadmissible.
[5] According to the AEMLD, the product need only be put into the stream of commerce for a sale to take place. Atkins v. AmericanMotors Corp., 335 So.2d 134, 139 (Ala. 1976).