Matthew William Flemister, as administrator of the estate of his mother, Sharon Ann Flemister, appeals from a judgment entered on a jury verdict in favor of General Motors ("GM") on Flemister's "crashworthiness" claim brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). GM cross-appealed, claiming the plaintiff presented insufficient evidence of proximate cause to allow the case to go to the jury.
Sharon Ann Flemister was the front-seat passenger in a 1988 Chevrolet Beretta automobile when it was struck by another car. The oncoming car hit the passenger door of the Beretta, and Mrs. Flemister was fatally injured. *Page 26 
Before this accident occurred, GM had recalled certain 1988 Beretta automobiles to replace "single-hung" "straight-pin" door hinges with "double-hung" hinges. The Flemister vehicle was not part of the recall. GM presented evidence indicating that the recall was made to correct a "fatigue cracking problem" that was not present in the Flemister vehicle (which had single-hung "conical-pin" hinges) and that the reported instances of Beretta door problems were due to the fatigue-cracking problem. The plaintiff claimed that certain Beretta car doors had been shown to fall off, even in the absence of an impact, and that this fact indicated a defectively weak hinge.
GM admitted that a double-hung door hinge was stronger, but presented evidence indicating that the single-hung conical-pin hinge on the Flemister vehicle was not defective. GM witnesses testified that the single-hung hinge was originally used to accommodate assembly of the car, but that when the assembly process changed there was no longer a manufacturing reason for preferring the single-hung hinge.
According to the plaintiff's expert, double-hung hinges would have withstood the force of the collision involving the Flemister vehicle and would have converted the impact into a "sideswipe." However, evidence as to the angle of the impact ranged from 25 to 60 and all of the experts testified that the angle of the impact was a significant factor in determining the force of the impact.
GM moved for a directed verdict at the close of the plaintiffs case and again at the close of all the evidence, arguing that the plaintiff had failed to prove proximate cause and that the evidence was insufficient for the case to go to the jury. The trial court denied the motions.
The trial court charged the jury on "crash-worthiness" (based on Alabama Pattern Jury Instructions: Civil, Instruction No. 32.22) (2d ed. 1993); on "negligent recall"; and on permissible damages. The plaintiff objected to the crashworthiness charge, specifically objecting to the language in Instruction 32.22 that refers to "consumer expectation," and GM objected to the negligent-recall instruction. The jury returned a verdict in favor of GM, and the trial court denied the plaintiff's motion for a new trial. The plaintiff appealed, and GM cross-appealed.
GM, in its cross-appeal, challenges the sufficiency of the evidence with regard to the issue of proximate causation. Our review of the record convinces us that the evidence was sufficient to create a genuine issue of material fact as to whether the alleged defect proximately caused Sharon Ann Flemister's death. Both parties submitted expert testimony regarding the design of the Beretta's door hinges, the history of hinge problems in other Beretta vehicles and the subsequent recall of those cars, the angle of the impact of the two vehicles, and the speed of the vehicles. The trial court correctly denied GM's motions for directed verdict and correctly allowed the case to go to the jury. See Cain v. SheratonPerimeter Park South Hotel, 592 So.2d 218 (Ala. 1991), and the authorities cited therein.
The plaintiff raises one issue on appeal: Whether the trial court's "crashworthiness" jury charge required the jury to apply an erroneous standard of proof. APJI No. 32.22, "Crashworthiness — General Instructions As To Automobile Manufacturer Under AEMLD," is based upon this Court's discussion in General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala. 1985). APJI No. 32.22 reads:
 "Plaintiff in this case does not claim that (the defendant manufacturer) caused the accident in question, but plaintiff claims that (the defendant manufacturer) is liable under what is known as the Alabama Extended Manufacturer's Liability Doctrine. In order for plaintiff to recover against (the defendant manufacturer), the plaintiff has the burden of proving each of the following elements:
 "1. That the plaintiff was involved in an automobile accident.
 "2. That the automobile in which plaintiff was an occupant . . . was manufactured by (the defendant manufacturer).
 "3. That, at the time of the accident, the automobile was in substantially the *Page 27 
same condition as it was when it left the manufacturer.
 "4. That the automobile was `defective.' That is to say, the plaintiff must prove that the automobile did not meet the reasonable expectations of an ordinary consumer as to its safety because it was unreasonably dangerous, that is, not fit for its intended purpose, which is to travel the streets, highways, and other thoroughfares. In order for plaintiff to prove that the automobile was defective, the plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the automobile. The existence of a safer, practical alternative design must be proven by plaintiff by showing that:
 "a. The plaintiff's injuries would have been eliminated or in some way reduced by the use of the alternative design; and that
 "b. The utility of the alternative design outweighed the utility of the design actually used. In deciding whether the utility of the alternative design outweighed the utility of the design actually used, factors which may be considered would include the intended use of the vehicle, its styling, cost, desirability, safety aspects, the foreseeability of the particular accident, the likelihood of injury, the probable seriousness of the injury if that accident occurred, the obviousness or not of the defect, and the manufacturer's ability to eliminate the defect.
 "5. The fifth element which plaintiff must prove is that the defect in the automobile proximately caused plaintiff's injuries.
 "In summary, in order for plaintiff to recover against the defendant automobile manufacturer, plaintiff must prove to your reasonable satisfaction each of the five elements of plaintiff's claim as I have just explained."
(Emphasis added.)
The plaintiff submitted a written requested charge that substantially mirrored APJI No. 32.22, but omitted the language regarding the "reasonable expectations of an ordinary consumer, " claiming that the test for judging design defect under the AEMLD should be based exclusively on a risk/utility analysis, with no reference to consumer expectations. The plaintiff argues that a consumer cannot have expectations with regard to a crashworthiness design defect because only the manufacturer knows how safe a product can be made.
The plaintiff summarized, as follows, his contention that it was error to give APJI No. 32.22:
 "There is no question . . . that A.P.J.I. 32.22 contains a risk/benefit analysis. The problem is that it also contains a consumer expectation requirement, and requires that the plaintiff prove both. . . .
 "In some cases, such as this hinge-design case, the ordinary consumer has no basis for a consumer expectation as to how crashworthy a hinge can be. Only the manufacturer knows that. The plaintiff simply asks that Alabama follows the lead of all jurisdictions that have recently addressed this conundrum: where a product is such that no consumer expectation is likely to exist, only the risk/utility analysis should be used."
We conclude, however, that Alabama law, as expressed in Edwards,supra; in Volkswagen of America, Inc. v. Marinelli, 628 So.2d 378
(Ala. 1993); and in APJI No. 32.22, does not require a plaintiff alleging uncrashworthiness to prove more than that he expected that his automobile was not "unreasonably dangerous, that is, not fit for its intended purpose." "Consumer expectation," considered in the context of the entire text of APJI No. 32.22, is not the exclusive test by which a jury evaluates an alleged design defect. Rather, the term "consumer expectation," as it is used in APJI No. 32.22, states only one factor of a standard that acknowledges a consumer's reasonable expectations as to the intended purpose of the automobile; APJI No. 32.22 also requires proof of the attendant risk and utility of the automobile's design and of any available design alternatives, from which proof a jury could reasonably conclude that the automobile's design was defective.
APJI No. 32.22 requires a jury to determine, using a risk/utility balancing process, *Page 28 
whether a plaintiff alleging a lack of crashworthiness has shown that a safer, practical alternative design existed that would have eliminated or reduced the plaintiff's injuries if it had been used. This method of analysis applies whether or not the plaintiff was aware of, or had formed an expectation with regard to, the effect of the alleged defect; it involves a balancing of the factors shown to exist with regard to the product's utility as against the risks posed by the use of the product.
We acknowledge the plaintiff's excellent discussion of the authorities criticizing the use of consumer expectation as an element of design defectiveness in products-liability cases, as well as a trend in other jurisdictions to adopt a pure risk/utility analysis as the standard by which to judge an alleged design defect.[1] However, whether our law for crashworthiness cases will be better served by maintaining the present "mixed" analysis or by adopting a risk/utility analysis is not an appropriate consideration under the facts of this case.
Because the jury's verdict is presumed to be correct, "[o]n appeal from [the] trial court's denial of a motion for new trial, this Court must affirm unless the jury verdict is so contrary to the weight and sufficiency of the evidence, viewed most favorably to [GM], that it is palpably wrong or manifestly unjust." LemondConstr. Co. v. Wheeler, 669 So.2d 855, 862 (Ala. 1995). Our review of the record leads us to conclude that GM presented evidence from which the jury could reasonably conclude that the Flemister vehicle was not defective, that is, that there was not a safer alternative design for the Flemister vehicle.
GM's recall of certain Beretta vehicles did not include the Flemister vehicle; the "fatigue cracking" problem of certain hinges was not related to the Flemister car; and no evidence indicated that the hinge on the Flemister car was defective. Although there was evidence that a different hinge may have made a difference in a "sideswipe" accident involving the Flemister car, the jury could infer from the expert testimony that the nature of the collision involving the Flemister vehicle was such that a different hinge would have made no difference, given the angle of the impact of the two cars.
APJI No. 32.22 ultimately requires, in resolving the issue of an alleged design defect, a balancing of the risk of harm to the consumer against the utility of the product's design. The trial court's charge to the jury fairly and substantially emphasized the risk/utility balancing as the basis for analyzing the alleged design defect. See Marinelli, supra. We therefore can not conclude that the jury was misled by the trial court's charge.
The judgment is affirmed, both as to the appeal and as to the cross-appeal.
1960603 — AFFIRMED.
1960652 — AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, and LYONS, JJ., concur.
ALMON and SEE, JJ., concur in the result.
[1] R.B. Hogan III, The Crashworthiness Doctrine, 18 Am. J. Tr. Advoc. 37 (1994); R.B. Hogan III, Risk/Utility or ConsumerExpectation: What Should Be Alabama's Analysis for ProductsLiability Design Cases? 56 Ala. Law. 166 (1995); John F. Vargo,The Emperor's New Clothes: The American Law Institute Adorns A"New Cloth" for Section 402A Products Liability Design Defects — ASurvey of the States Reveals A Different Weave, 26 U. Mem. L. Rev. 493 (1996); John Wade, On the Nature Of Strict TortLiability For Products, 44 Miss. L.J. 825 (1973); John Wade, OnProduct "Design Defects" And Their Actionability, 33 Vand. L.Rev. 551 (1980); Nole, Strict Products Liability And The Risk/UtilityTest For Design Defects: An Economic Analysis, 84 Colum. L. Rev. 2045 (1984); Note, The Consumer Expectation Test In New Jersey:What Can Consumers Expect Now? 54 Brook. L. Rev. 1381 (1989); 2A Louis Frumer and Melvin I. Friedman, Products Liability § 2.16[3] (1994). *Page 29