27 So.3d 489 (2009)
Marcella SPARKS
v.
TOTAL BODY ESSENTIAL NUTRITION, INC., et al.
Cindi Howard, Marion Howard, and Joshua Taylor
v.
Total Body Essential Nutrition, Inc., et al.
1071708.
Supreme Court of Alabama.
July 17, 2009.
*490 Jeffrey C. Rickard and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for plaintiffs.
Duncan Y. Manley, Sharon D. Stuart, and J. Paul Zimmerman of Christian & Small LLP, Birmingham, for defendant Wright Enrichment, Inc.
Joseph H. Driver, Glenn E. Ireland, Sean C. Pierce, and Taylor C. Powell of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for defendant Tex-American Food Blending, Inc.
LYONS, Justice.
These cases are before this Court on a certified question from the United States District Court for the Northern District of Alabama.

Facts and Procedural History
At various times Marcella Sparks, Cindi Howard, Marion Howard, and Joshua Taylor (collectively referred to as "the consumers") purchased a dietary supplement known as "Total Body Formula" from St. John's Nutrition, a health-food retailer in Oxford, Alabama.[1] St. John's Nutrition is a retail seller of Total Body Formula and received the supplement from the manufacturer in sealed, prepackaged containers. St. John's Nutrition sold Total Body Formula to the consumers in the same condition as it was received by St. John's Nutrition. The consumers allege that after ingesting Total Body Formula, they suffered serious and permanent physical injuries resulting from high levels of selenium and chromium contained in the supplement.
In two separate actions[2] filed on April 28, 2008, the consumers sued Total Body Essential Nutrition, Inc.; TexAmerican Food Blending, Inc.; Wright Enrichment, Inc.; and St. John's Nutrition in the Calhoun Circuit Court, asserting claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for the manufacture and/or sale of a defective and unreasonably dangerous product, negligent failure to warn, negligence, negligent and/or reckless marketing, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose, and asserting a claim of fraud. On June 6, 2008, TexAmerican Food Blending removed the two actions to the federal district court pursuant to 28 U.S.C. § 1332, asserting that the amount in controversy exceeded the threshold jurisdictional limit of the federal district court and that diversity jurisdiction existed because St. John's Nutrition, the only named defendant with an Alabama residence for purposes of determining *491 federal diversity jurisdiction, see 28 U.S.C. § 1332(c)(1), had been fraudulently joined.
Fraudulent joinder is established "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th. Cir.1998). "`If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'" Triggs, 154 F.3d at 1287 (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.1983)). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287. The removing party must establish fraudulent joinder by clear and convincing evidence. Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). When fraudulent joinder is established by the removing party, "the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." Florence v. Crescent Res., LLC, 484 F.3d 1293, 1297 (11th Cir.2007).
On July 2, 2008, the consumers moved the federal district court to remand the two actions to the Calhoun Circuit Court, arguing that St. John's Nutrition was not fraudulently joined so as to defeat jurisdiction based on diversity of citizenship. The consumers argued in their motion that TexAmerican Food Blending had failed to establish by clear and convincing evidence that there existed no possibility that causes of action for breach of the implied warranties of merchantability and fitness for a particular purpose could be stated against St. John's Nutrition. Relying upon the sealed-container doctrine, Tex-American Food Blending argued that the consumers could not possibly establish causes of action against St. John's Nutrition for breach of the implied warranties of merchantability and fitness for a particular purpose because, it argued, there existed no causal relationship between the conduct of St. John's Nutrition and the allegedly defective product.
Following a hearing, the federal district court, on September 8, 2008, entered an order finding that TexAmerican Food Blending had proven by a preponderance of the evidence that the consumers' claims exceeded the jurisdictional amount of $75,000. However, the federal district court concluded that it is not clear under Alabama law whether claims alleging the breach of the implied warranties of merchantability and fitness for a particular purpose are subject to the defense of the sealed-container doctrine. If the consumers' claims against St. John's Nutrition alleging breach of the implied warranties of merchantability and fitness for a particular purpose are barred as a matter of law by the sealed-container doctrine, then the joinder of St. John's Nutrition as a defendant in the actions would be considered fraudulent. Therefore, the federal district court, pursuant to Rule 18, Ala. R.App. P., certified the following question to this Court:
"Whether, under Alabama's Uniform Commercial Code, a retail seller who has purchased goods from a reputable manufacturer in enclosed, pre-packaged and sealed containers, with alleged imperfections that cannot be discovered by the exercise of reasonable care by the seller, can be held liable for any alleged imperfections in the product under an implied warranty of merchantability and or fitness for particular purpose; or *492 whether, instead, the UCC imposes strict liability upon a retail seller of goods thereby eradicating the `lack of proximate cause defense' provided to retail sellers under the AEMLD, as set forth in Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976)."
The former United States Court of Appeals for the Fifth Circuit, in the first case using the certification procedure adopted in Amendment No. 328, § 6.02, Alabama Constitution 1901 (now Art. VI, § 140, Off. Recomp.), stated:
"Five questions were certified but, following our usual practice, we left it to the Alabama Court to formulate the issues. As was their prerogative, the Alabama Court did just that and considered the basic issues rather than replying categorically to the certified questions."
Barnes v. Atlantic & Pacific Life Ins. Co. of America, 530 F.2d 98, 99 (5th Cir.1976) (footnote omitted).
Consistent with this prerogative, we note that the question as framed by the federal district court refers to "strict liability" as "eradicating the `lack of proximate cause defense.'" However, as the Court noted in Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976), the recognition of a defense of lack of causal relation arising from a defendant's activities in connection with handling the product and its defective condition "is not to be confused with the burden which rests on the plaintiff to prove that his injuries and damages were the proximate result of the defective condition of the product." Atkins, 335 So.2d at 143 n. 4. Finally, Alabama's Uniform Commercial Code ("the UCC") is equally attentive to the plaintiff's burden of establishing proximate cause. See, e.g., § 7-2-715(2)(b), Ala.Code 1975 ("Consequential damages resulting from the seller's breach include: ... Injury to person or property proximately resulting from any breach of warranty." (emphasis added)); § 7-2-314, Ala.Code 1975, Official Comment, ¶ 13 ("In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." (emphasis added)).
We therefore rephrase the question posed by the federal district court as follows:
"Whether, under the UCC, a retail seller who has purchased goods from a reputable manufacturer in enclosed, pre-packaged and sealed containers, with alleged imperfections that cannot be discovered by the exercise of reasonable care by the seller, can be held liable for any alleged imperfections in the product under an implied warranty of merchantability and/or fitness for particular purpose; or, put another way, whether the UCC imposes liability upon a retail seller of goods without the availability of the defense of `lack of causal relation' provided to retail sellers under the AEMLD, as set forth in Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976)."
Only the consumers, TexAmerican Food Blending, and Wright Enrichment, Inc., have filed briefs with this Court.

Discussion
In Bradford v. Moore Brothers Feed & Grocery, 268 Ala. 217, 105 So.2d 825 (1958), this Court recognized the availability of the sealed-container doctrine to claims asserting the breach of implied warranties against retail sellers arising under the Uniform Sales Act.[3] The view that the *493 sealed-container defense survived the creation of implied warranties under the Uniform Sales Act has been described as the minority view. See Sams v. Ezy-Way Foodliner Co., 157 Me. 10, 18-19, 170 A.2d 160, 165 (1961), citing Kirkland v. Great Atlantic & Pacific Tea Co., 233 Ala. 404, 171 So. 735 (1936); Bradford v. Moore Bros. Feed & Grocery, supra; Wilkes v. Memphis Grocery Co., 23 Tenn.App. 550, 134 S.W.2d 929 (1939); and Green v. Wilson, 194 Ark. 165, 105 S.W.2d 1074 (1937), as expressing the minority rule and describing the opposing view as supported by "the great weight of authority." Our Court justified the availability of the sealed-container defense on the theory that the Uniform Sales Act was declarative of the common law. See Bradford, 268 Ala. at 220, 105 So.2d at 827. Other courts reached the opposite conclusion. See, e.g., Sams v. Ezy-Way Foodliner Co., 157 Me. at 21, 170 A.2d at 166 ("The Uniform Sales Act in establishing implied warranties under Section 15 ended our `sealed container' rule at common law.").
We cannot, however, view the enactment of the UCC as a legislative exercise that is merely declaratory of the common law. See Official Comment to § 7-1-103, Ala.Code 1975:
"2.... Therefore, while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies."
Section 7-2-314, Ala.Code 1975, provides:
"(1) Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
"(2) Goods to be merchantable must be at least such as:
"(a) Pass without objection in the trade under the contract description; and
"(b) In the case of fungible goods, are of fair average quality within the description; and
"(c) Are fit for the ordinary purposes for which such goods are used; and
"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
"(e) Are adequately contained, packaged, and labeled as the agreement may require; and
"(f) Conform to the promises or affirmations of fact made on the container or label if any."
No provision is made for a defense to a claim of a breach of an implied warranty under § 7-2-314 based on the sealed-container doctrine. We view this silence as an abrogation of the common-law defense, rather than permission to carry it forward. Nothing in the Official Comment to § 7-2-314 supports the proposition that the sealed-container defense may be carried forward; the Comment is silent on the *494 effect of care on the part of the seller once a breach of implied warranty has been established. We applied Florida law based on analogous provisions of the Florida UCC in AmSouth Bank v. Tice, 923 So.2d 1060, 1065 (Ala.2005). We there stated:
"Thus, Burtman [v. Technical Chemicals & Products, 724 So.2d 672 (Fla.Dist. Ct.App.1999),] stands for the principle that displacement of a common-law rule under the UCC does not require an unequivocal, explicit reference to the common-law rule being displaced. If the UCC provision conflicts with the common law in some way, the common law must be said to be displaced."
(Emphasis added.) The rule in Tice is sound and due to be applied to the identical provisions of the Alabama UCC dealing with the applicability of the common law following the adoption of the UCC. Any other result would run counter to the principles of liability established in § 7-2-314. Indeed, the availability of the sealed-container defense to a claim based on a product that arrives in a sealed package would be irreconcilable with the simultaneous recognition of a claim arising from the sale of a product that does not arrive in a sealed package yet has component parts, such as an engine crankcase, equally concealed from view, that might contain a defective piston. Of course, under the latter circumstance, a claim of breach of an implied warranty would unquestionably exist.
Recognition of the sealed-container defense to claims of breach of implied warranty under § 7-2-314 is a policy matter best left to the wisdom of the legislature. Other states have resolved the question by statute in favor of[4] and against the availability of the defense.[5]
The treatment of this identical issue in Georgia is especially instructive. In Pierce v. Liberty Furniture Co., 141 Ga. App. 175, 176, 233 S.E.2d 33, 35 (1977), superseded by statute on other grounds as stated in Alltrade, Inc. v. McDonald, 213 Ga.App. 758, 445 S.E.2d 856 (1994), a furniture store sold a porch-swing kit in a sealed container it had received from the manufacturer of the swing. The customer assembled the swing, sat in it, and was injured when a piece of hardware failed. She sued the retailer under the Georgia version of the UCC, § 2-314, alleging breach of the implied warranty of merchantability. Reversing a summary judgment in favor of the retailer, the Court of *495 Appeals of Georgia concluded that there was evidence indicating that the swing was unfit for the ordinary purposes for which such goods are used and that the retailer could be held liable for breach of the implied warranty of merchantability.
Addressing the sealed-container defense, the Georgia court stated:
"All of the post-U.C.C. authority that we have studied indicates that the implied warranty of merchantability does not base any distinctions upon whether or not goods are sold in their original packages. See, e.g., R. Anderson, 1 Uniform Commercial Code § 2-314: 70-72 (2d ed. 1970); G. Kock, Georgia Commercial Practice 40-41 (1964); White, `Sales Warranties Under Georgia's Uniform Commercial Code,' 1 Ga. State Bar J. 191, 196-97 (1964). The provision, in fact, establishes a concept for retailers similar to that employed in Code Ann. § 105-106, supra, by which manufacturers may be held strictly liable for defective products.
"Prior to the enactment of the U.C.C., Georgia adhered to the `sealed container doctrine.' See Wood v. Hub Motor Co., 110 Ga.App. 101(2), 137 S.E.2d 674 (1964); Maroney v. Montgomery Ward & Co., 72 Ga.App. 485, 34 S.E.2d 302 (1945); Bel v. Adler, 63 Ga.App. 473(2), 11 S.E.2d 495 (1940). According to that doctrine, no warranty of merchantability applied as to the retailer of goods in their original packages, manufactured by reputable manufacturers, and in general use in the retail trade. In Wood v. Hub Motor Co., supra, however, it was specifically noted that this line of decisions was based on Code § 96-301, which was repealed with the advent of the U.C.C. in Georgia.

"Since the adoption of the U.C.C., several Georgia cases have applied the implied warranty of merchantability to retailers of goods sold in sealed packages. In Fender v. Colonial Stores, Inc., 138 Ga.App. 31(1)(A), 225 S.E.2d 691 (1976), the plaintiff took a six-pack carton of Coca-Cola from a shelf in the supermarket. She then proceeded to the check-out counter, and placed the carton upon the counter, at which time a bottle exploded and injured her. She sued the supermarket and suffered a directed verdict. This court held, on p. 35, 225 S.E.2d p. 695, `that Coca-Cola bottles which would break under normal handling are not fit for the ordinary use for which they were intended ...' and thus there was a prima facie showing by the plaintiff of a claim under the U.C.C.'s implied warranty of merchantability. The case was remanded for a jury trial.
"Chaffin v. Atlanta Coca Cola etc. Co., 127 Ga.App. 619(1), 194 S.E.2d 513 (1972), also deals with a bottled soft drink which was not merchantable. In this case the plaintiff's daughter purchased a Coke from a vending machine at a Big Apple grocery store. The plaintiff was injured while drinking an impure substance which was contained in the bottle. The plaintiff sued the grocery store on several grounds, including that of breach of the U.C.C. implied warranty of merchantability. The judge refused to charge the jury as to the implied warranty, and the jury found against the plaintiff. This court held that the trial court erred in its refusal to charge.
"Numerous other cases from this court, while not dealing specifically with goods sold in original containers, have used a strict liability approach to hold retailers liable for damage, suffered due to a breach of the U.C.C. implied warranty of merchantability. Redfern Meats v. Hertz, 134 Ga.App. 381, 215 S.E.2d 10 (1975) (improperly operating *496 truck); Ray v. Deas, 112 Ga.App. 191, 144 S.E.2d 468 (1965) (foreign substance in hamburger)."
141 Ga.App. at 176-78, 233 S.E.2d at 35-36 (emphasis added). A subsequent enactment of the Georgia Legislature has deprived Pierce v. Liberty Furniture Co. of precedential value as to its treatment of a separate issue involving strict liability. See Ga.Code Ann. § 51-1-11.1 (2006).
When the Alabama Legislature enacted the UCC, it repealed the Uniform Sales Act. See § 7-10-102(1), Ala.Code 1975. The now repealed Uniform Sales Act was acknowledged by this Court to be the basis for the sealed-container defense in Bradford, 268 Ala. at 220, 105 So.2d at 827. On the same rationale as that employed by the Georgia appellate court in Pierce v. Liberty Furniture Co., we conclude that the replacement of the Uniform Sales Act with the UCC eliminated the sealed-container defense.
The recourse of the retailer under the circumstance here presented is a claim against its seller on its breach of implied warranty, not absolution. See Pierce v. Liberty Furniture Co., 141 Ga.App. at 178, 233 S.E.2d at 36, stating the correct result under analogous provisions of the Georgia UCC:
"It should be noted that under this holding a retailer is not a defenseless party who will be caught with a monetary loss due to another's faulty construction of products. The retailer's remedy is an action over against his seller not exculpation. The retailer may rely on the wholesaler or manufacturer to supply merchantable goods, and if they are not merchantable, the retailer has the same claim for breach of warranty as its customer had against it."
We answer the certified question in the affirmative and hold that the sealed-container defense is not available to the retail seller of food products in claims asserting a breach of implied warranty under the UCC.
QUESTION ANSWERED.
COBB, C.J., and WOODALL, PARKER, and MURDOCK, JJ., concur.
STUART, SMITH, BOLIN, and SHAW, JJ., dissent.
BOLIN, Justice (dissenting).
Because I believe that the enactment of Alabama's Uniform Commercial Code ("the UCC") did not abrogate the sealedcontainer defense, I must respectfully dissent from the main opinion.
Section 7-2-314, Ala.Code 1975, provides:
"(1) Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
"(2) Goods to be merchantable must be at least such as:
"(a) Pass without objection in the trade under the contract description; and
"(b) In the case of fungible goods, are of fair average quality within the description; and
"(c) Are fit for the ordinary purposes for which such goods are used; and
"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

*497 "(e) Are adequately contained, packaged, and labeled as the agreement may require; and
"(f) Conform to the promises or affirmations of fact made on the container or label if any."
Section 7-2-315, Ala.Code 1975, provides:
"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose."
It is clear under Alabama law that in order to establish a breach-of-an-implied-warranty claim, a plaintiff must prove that the breach was the proximate cause of the plaintiff's injury. See Cain v. Sheraton Perimeter Park South Hotel, 592 So.2d 218, 221 (Ala.1991) ("Under both the [Alabama Extended Manufacturer's Liability Doctrine] and § 7-2-314, the defect or lack of merchantability, of course, must be proved to have been the proximate cause of the plaintiff's injuries."); Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999); Rose v. General Motors Corp., 323 F.Supp.2d 1244 (N.D.Ala.2004); and Chase v. Kawasaki Motors Corp., U.S.A., 140 F.Supp.2d 1280, 1289 (M.D.Ala.2001) ("In an action for breach of the implied warranty of fitness for a particular purpose, the Plaintiffs must prove: (1) the existence of the implied warranty; (2) breach of the implied warranty; and (3) damages proximately resulting from that breach. Barrington Corp. v. Patrick Lumber Co., Inc., 447 So.2d 785, 787 (Ala.Civ.App.1984).").
Alabama has historically adhered to the common-law sealed-container doctrine as a defense to the element of causation. The sealed-container doctrine was first established in this state in Dothan Chero-Cola Bottling Co. v. Weeks, 16 Ala.App. 639, 80 So. 734 (1918). In Weeks, the plaintiff sued the manufacturer of a bottled soda after ingesting the tainted contents of the bottle and was awarded $10 in damages. The defendant argued that the plaintiff's complaint sounded in tort and, therefore, that the plaintiff was allowed to recover no more costs than damages pursuant to § 3663 of the 1907 Code. In affirming the judgment, the Court of Appeals stated:
"It is a well-settled rule of law that where a manufacturer sells articles of his own make in the absence of an express warranty, a warranty by implication of law arises that such articles are reasonably fit for the purposes for which they were intended. So in the absence of an express warranty the law implies that the manufacturer or packer of foods, beverages, drugs, condiments, and confections intended for human consumption warrants that their products are fit for human consumption, and that they have used in the selection and preparation of such articles that degree of care ordinarily exercised by persons skilled in the business of preparing and packing articles of this character for distribution or sale to the general public.
"This warranty is not for the benefit of the retailer who purchases in large quantities for resale, and such retailer is not liable to the consumer of articles of the character here involved, if he purchases of a reputable manufacturer or dealer, and the goods so purchased and supplied by him are such as are without imperfections that may be discovered by the exercise of the reasonable care of a person skilled and experienced in dealing in and supplying goods to the general public. `As to hidden imperfections, the consumer must be deemed to have relied on the care of the packer or manufacturer or the warranty which is held *498 to be implied by the latter.' 29 R.C.L. p. 1124, § 29. This warranty is raised by implication of law, for the benefit and protection of the consumer, regardless of the absence of express contractual relations between parties, and is enforceable by contract remedies....
"The second count of the complaint clearly states facts from which the law would imply a warranty as between the defendant and the plaintiff that the contents of the bottle of Chero-Cola were fit for human consumption, and that the defendant had used, in the selection and preparation of this drink, that degree of care ordinarily exercised by persons skilled in the business of preparing such drinks for distribution and sale to the public, and further states facts showing a breach of such warranty. We therefore hold that the complaint, when liberally construed to support the judgment, states a cause of action ex contractu, and is in assumpsit for a breach of implied warranty, and under the provisions of section 3662 of the Code as amended, the court was invested with a discretion in the taxation of costs according to the equities of the case."
Weeks, 16 Ala.App. at 640, 80 So. at 735 (citations omitted).
In Kirkland v. Great Atlantic & Pacific Tea Co., 233 Ala. 404, 171 So. 735 (1936), this Court applied the sealed-container doctrine to a retail transaction. In Kirkland, the plaintiff purchased from the defendant, a retail grocer, a bag of flour that was tainted with arsenic. The plaintiff was injured after ingesting the flour and sued the defendant, asserting a claim of negligence.[6] Nothing in the plaintiff's complaint alleged that the defendant had manufactured or sacked the flour; that the arsenic found its way into the flour while the flour was in the defendant's possession; or that the defendant had notice or should have had notice that the sack of flour was tainted with arsenic. The trial court entered a judgment of nonsuit against the plaintiff. Kirkland, supra.
In affirming the judgment in favor of the defendant, this Court stated:
"In Dothan Chero-Cola Bottling Co. et al. v. Weeks, 16 Ala.App. 639, 640, 80 So. 734, 735 [(1918)], speaking of bottled soft drinks, it was said: `Such retailer is not liable to the consumer of articles of the character here involved, if he purchases of a reputable manufacturer or dealer, and the goods so purchased and supplied by him are such as are without imperfections that may be discovered by the exercise of the reasonable care of a person skilled and experienced in dealing in and supplying goods to the general public. Bigelow v. Maine Central R.R. Co., 110 Me. 105, 85 A. 396, 43 L.R.A. (N.S.) 627 [(1912)]; Winsor v. Lombard, 18 Pick. ([35] Mass.) 57 [(1836)]. "As to hidden imperfections, the consumer must be deemed to have relied on the care of the packer or manufacturer or the warranty which is held to be implied by the latter." 29 R.C.L. p. 1124, § 29.'
"This case has been disapproved on another point, but not as to the above statement. Birmingham Chero-Cola Bottling Co. v. Clark, [205 Ala. 678, 89 So. 64 (1921)]. We deem this announcement in keeping with the better reason and the trend of modern authority on the subject....
"....
"In this day the grocer's stock consists in much of canned goods, goods in *499 bottles, cartons, sacks, packages of great variety, put up under pure food regulations, and sold at retail in the unopened package. In common reason the grocer could not inspect the contents of every sack of flour he handles. No one expects him to do so. To impose a legal duty so to do is too exacting. The legal responsibility should rest where it belongs, on him who made the package and inclosed poisonous substances therein. In the absence of some averment disclosing that the poison found its way into the sack of flour here involved while under the control of the retailer, or some fact charging him with lack of care in selecting and selling that particular flour, the complaint was subject to demurrer."
Kirkland, 233 Ala. at 406-07, 171 So. at 737.
This Court, in Bradford v. Moore Brothers Feed & Grocery, 268 Ala. 217, 105 So.2d 825 (1958), reaffirmed the application of the sealed-container doctrine to claims asserting a breach of implied warranties against retail sellers arising under the Uniform Sales Act. In Bradford, the plaintiff purchased from the defendant sacks of "cow feed" that were infested with mold. The defendant, a retailer in commercial feed, sold the feed in original, unopened sacks that had been packed by the manufacturer. The plaintiff sued the defendant, alleging a breach of an implied warranty, and the trial court entered a directed verdict in favor of the defendant. Relying upon Weeks, supra, and Kirkland, supra, the defendant argued on appeal that the plaintiff could not state a cause of action for breach of an implied warranty because a retail seller of commercial feed sold the feed to the plaintiff in original, unopened sacks that were packed by the manufacturer. This Court stated the following with regard to the sealed-container doctrine:
"It is true that the two cases cited [Weeks and Kirkland] are authority for the proposition that the retailer who purchases in large quantities for resale is not liable to the consumer of articles of food for human consumption, if he purchases of a reputable manufacturer or dealer, and the goods so purchased and supplied by him are such as are without imperfections that may be discovered by the exercise of the reasonable care of a person skilled and experienced in dealing in and supplying goods to the general public. Cf. Lollar v. Jones, 229 Ala. 329, 157 So. 209 [(1934) ]. We may note here that both cases make the rule expressly applicable only to cases involving food intended for human consumption. But we may assume for the purposes of this case, without deciding, that the principle is equally effective with regard to feed sold for the subsistence of livestock and other domestic animals. It would seem that this should be so a fortiori. At least it has been so applied in other jurisdictions....
"It may be added that the general rule stated has neither been overruled nor modified in this state, although the trend is to a more liberal rule in other jurisdictions placing an implied warranty upon the retail sale of packaged items as well as those not packaged. The trend has apparently received especial impetus since the almost universal adoption of the Uniform Sales Acts. See the notes at 90 A.L.R. 1269 and 142 A.L.R. 1434. The adoption of the Uniform Sales Act in Alabama (Code 1940, Title 57, §§ 1-76) has worked no change of the general rule. The reaffirmation of the rule in the Kirkland case, supra, occurred in 1936, several years subsequent to the passage of the Act in this state, and the court in that case expressed their cognizance *500 of the Act but dealt with the case without reference thereto. This position is consistent with the view stated by this Court and generally recognized most everywhere that § 21 of the Uniform Sales Act is only declarative of the common law. McCarley v. Wood Drugs, Inc., 228 Ala. 226, 153 So. 446 [(1934)], 77 C.J.S. Sales § 329, p. 1186.
"The general rule to which recognition is given above, would require an affirmance were it not for the facts present here which we feel should be treated as within an exception to the rule. Here the retailer handled, stored, or treated the goods in a manner which would tend to alter the original condition of the goods as they were produced by the manufacturer and the clear inference arises that the retailer had actual or constructive notice of the defective status of the goods. The Kirkland case, supra [233 Ala. 404, 171 So. at 736], recognized such a status to be an exception to the general rule where it was observed:
"`The complaint does not charge that defendant manufactured or sacked this flour; nor that the poison found its way into the flour while in defendant's possession; nor that anything on the sack, nor the source from which it came, gave notice to the retailer, or put him on inquiry touching its fitness for human consumption. For aught appearing, this was an ordinary sack of flour, put up by reliable millers, to be sold by the retailer intact, for the convenience of both merchant and customer.'
"And again:
"`In the absence of some averment disclosing that the poison found its way into the sack of flour here involved while under the control of the retailer, or some fact charging him with lack of care in selecting and selling that particular flour, the complaint was subject to demurrer.'"
Bradford, 268 Ala. at 219-20, 105 So.2d at 827-28. In reversing the judgment of the trial court, this Court concluded that evidence was presented that created a question of fact as to whether the buyer could rely on the implied warranty in the sale of the feed based on the defendant's having a superior knowledge of the condition of the feed or a better opportunity for inspection of the feed, which might have given the defendant actual or constructive notice of some defect in the feed pertaining to its merchantability or fitness for a particular purpose. Bradford, supra.
In Allen v. Delchamps, Inc., 624 So.2d 1065 (Ala.1993), a case decided after the enactment of the UCC, the lack of a distinct line between tort claims and claims asserting a breach of an implied warranty in tainted-food-product cases was never more evident. In Allen the plaintiff purchased from the defendant grocery store two bags of celery hearts that had been prepackaged in cellophane wrapping by the defendant's supplier. The defendant had inspected samples of the celery at its warehouse for freshness and quality. The plaintiff ingested a piece of the raw celery and had an immediate allergic anaphylactic reaction. It was later determined that the celery contained sodium bisulfate, which the plaintiff, an asthmatic, was sensitive to.
The plaintiff sued the defendant, among others, asserting causes of action based on negligence and wantonness, the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), and breach of the implied warranty of merchantability under § 7-2-314, Ala.Code 1975. The trial court entered a summary judgment in favor of the defendant as to all the plaintiff's claims. Allen, supra.
*501 This Court stated the following relative to the principles applicable to tort claims and breach-of-implied-warranty claims in tainted-food-product cases:
"In regard to their AEMLD claim, the plaintiffs must prove that Mrs. Allen `suffered injury or damages to [herself] or [her] property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer.' Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala.1976). Similarly, the plaintiffs' implied warranty of merchantability claim requires that the plaintiffs show that the goods were unmerchantable or unfit for the ordinary purposes for which they are used. Ala.Code 1975, § 7-2-314. These two standards `go hand-in-hand,' at least as applied to food products, `for it is apparent that a food product is defective or unreasonably dangerous if it is unmerchantable or unfit for human consumption.' Cain v. Sheraton Perimeter Park S. Hotel, 592 So.2d 218, 220 (Ala.1991) (quoting Ex parte Morrison's Cafeteria of Montgomery, Inc., 431 So.2d 975, 977 (Ala.1983)).
"This Court has adopted the `reasonable expectations' test for determining if food is unmerchantable or unreasonably dangerous. Cain, 592 So.2d at 221; Morrison's, 431 So.2d at 978. Under this test, the pivotal issue is what is reasonably expected by the consumer in the food as served, and the `[n]aturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served.' Morrison's, 431 So.2d at 978 (quoting Zabner v. Howard Johnson's, Inc., 201 So.2d 824, 826 (Fla.Dist. Ct.App.1967)). Because the terms `defect,' `unreasonably dangerous,' and `merchantable' all focus on the expectations of the consumer, this Court has found the reasonable expectations test to be compatible with both the AEMLD and the implied warranty of merchantability. Cain, 592 So.2d at 221."
Allen, 624 So.2d at 1068.
This Court reversed the summary judgment in favor of the defendant on the plaintiffs' AEMLD claim,[7] stating:
"Delchamps asserts that this case is different from Cain because in Cain the summary judgment on the AEMLD claim was based on the trial court's finding that the AEMLD did not apply, whereas in this case, Delchamps says, the summary judgment on the AEMLD claim was based on evidence establishing a lack of causal relation. To establish the defense of a lack of causal relation, the defendant may show `that there is no causal relation in fact between his activities in connection with handling the product and its defective condition.' Atkins v. American Motors Corp., 335 So.2d 134, 143 (Ala.1976). One way to establish this lack of a causal relation is for the defendant to show:
"`[T]hat he is in the business of either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer.'
"Id.

*502 "While Delchamps showed that it is in the business of distributing finished products, that it received a product already in a defective condition, and that it did not contribute to the defective condition, it, nevertheless, did not show conclusively that it did not possess an `opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer.' Id. The plaintiffs showed that Delchamps did inspect for freshness and quality and did have procedures for requiring its suppliers to certify compliance with other regulations regarding insecticides and pesticides. Whether Delchamps's opportunity to discover or to know of the defect is superior to that of the consumer is a genuine issue of material fact; therefore, the court erroneously entered the summary judgment as to the AEMLD claim. Delchamps is entitled to present evidence and to argue that there was no causal relation between what it did or failed to do and Mrs. Allen's injuries, but it must do so to the factfinder."
Allen, 624 So.2d at 1068-69. Thus, this Court did not reject the sealed-container doctrine as a defense to the element of causation; rather, it determined that the defendant had failed to present evidence establishing that defense as a matter of law.
It is clear that the sealed-container doctrine was available to retailers of food products at common law and under the Uniform Sales Act, the predecessor to the UCC, as a defense to causation in both claims sounding in tort and those asserting a breach of an implied warranty. The question is whether that defense is still available to retail sellers of food products following the enactment of the UCC.
As the federal district court noted in its certification order to this Court, the enactment of the UCC replaced the warranty provisions of the Uniform Sales Act (and presumably those of the common law). See the Official Comment to § 7-2-314, Ala.Code 1975, stating as "[c]hanges" that § 15(2) of the Uniform Sales Act was "[c]ompletely rewritten"; and the Official Comment to § 7-2-315, Ala.Code 1975, stating that §§ 15(1), (4), and (5) of the Uniform Sales Act had been "[r]ewritten." Section 7-1-103(b), Ala.Code 1975, provides that "[u]nless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions." Further,
"[t]he Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement its provisions in many important ways. At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies."
*503 Official Comment to § 7-1-103, Ala.Code 1975. "Under § 7-1-103, prior existing law supplements the various code sections 'unless displaced by the particular provisions of this title.' It is clear from this that if the particular code provisions do displace prior law, the code prevails." Toomey Equip. Co. v. Commercial Credit Equip. Corp., 386 So.2d 1155, 1159 (Ala. Civ.App.1980). In other words, the UCC is to be supplemented by the existing principles of law and equity if no precise provision of the UCC applicable to the issues presented contradicts those principles. See H.C. Schmieding Produce Co. v. Cagle, 529 So.2d 243 (Ala.1988).
Nothing in the express provisions of §§ 7-2-314 and -315 indicate that previously accepted defenses were abrogated by the enactment of the UCC. Nor have the plaintiffs directed this Court to any other provision of the UCC that supplants the defenses available at common law. In fact, it appears from the Official Comment to § 7-2-314 that common-law defenses to causation were affirmatively left intact by the legislature when the UCC was enacted. The Official Comment to § 7-2-314 states:
"In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained. In such an action an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense. Equally, evidence indicating that the seller exercised care in the manufacture, processing or selection of the goods is relevant to the issue of whether the warranty was in fact broken. Action by the buyer following an examination of the goods which ought to have indicated the defect complained of can be shown as matter bearing on whether the breach itself was the cause of the injury."
Additionally, I note that because causation is an element of a breach of an implied warranty, the abrogation of the defenses available to retail defendants as to that element would have the effect of making the retail defendant strictly liable and the insurer of the goods it sells. The idea of making a retailer the insurer of the goods it sells has been rejected by this Court. See Ex parte Morrison's Cafeteria of Montgomery, Inc., 431 So.2d 975, 979 (Ala. 1983) ("Courts cannot and must not ignore the common experience of life and allow rules to develop that would make sellers of food or other consumer goods insurers of the products they sell."); Atkins v. American Motors Corp., 335 So.2d 134, 142 (Ala. 1976) (rejecting the idea of strict liability under the AEMLD and stating "that defendants who are ordinarily engaged in the business of marketing products should be liable for the foreseeable harm proximately resulting from defective conditions in the products which make them unreasonably dangerous").
Accordingly, I would hold that the sealed-container doctrine as stated in Kirkland, supra, and Bradford, supra, is available as a defense to the retail seller of food products in claims asserting a breach of an implied warranty under the UCC.
STUART, SMITH, and SHAW, JJ., concur.
NOTES
[1] The consumers state that St. John's Nutrition "apparently is a sole proprietorship." Consumers' brief, at 1.
[2] Sparks was the plaintiff in the first action (CV-08-PT-1010-E), and Cindi Howard, Marion Howard, and Taylor were the plaintiffs in the second action (CV-08-PT-1012-E).
[3] The Uniform Sales Act was repealed when the UCC was enacted. See § 7-10-102(1), Ala.Code 1975.
[4] See N.C. Gen.Stat. Ann. § 99B-2(a) (2007) ("No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession; provided, that the provisions of this section shall not apply if the manufacturer of the product is not subject to the jurisdiction of the courts of this State or if such manufacturer has been judicially declared insolvent.").
[5] See, e.g., Tenn.Code Ann. § 29-28-106(a)(2000) ("No `product liability action,' as defined in § 29-28-102(6), shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition. The provisions of the first sentence of this subsection shall not apply to: (1) Actions based upon a breach of warranty, express or implied, as defined by title 47, chapter 2....").
[6] This Court specifically noted in Kirkland that the plaintiff had not asserted a claim under the Uniform Sales Act, the predecessor to the UCC.
[7] The defendant grocery store apparently failed to argue the sealed-container doctrine as a defense to the plaintiffs' claim alleging breach of implied warranty because the summary judgment as to that claim was reversed on other grounds.